UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JESSIE BRADBERRY,

                Plaintiff,

  v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

                Defendant.

Case No. 3:10-cv-05272-KLS

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On August 15, 2005, plaintiff filed an application for disability insurance benefits, alleging disability as of March 20, 2002, due to hip and back problems. See Tr. 9. 78, 83, 109. His application was denied upon initial review and on reconsideration. See Tr. 9, 42, 47, 50. A hearing was held before an administrative law judge ("ALJ") on September 9, 2008, at which plaintiff, represented by counsel, appeared and testified. See Tr. 19-39.

ORDER - 1

On September 23, 2008, the ALJ issued a decision in which plaintiff was determined to be not disabled. See Tr. 9-18. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on March 4, 2010, making the ALJ's decision defendant's final decision. See Tr. 1; see also 20 C.F.R. § 404.981. On April 21, 2010, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1. The administrative record was filed with the Court on June 14, 2010. See ECF #8. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits or, in the alternative, for further administrative proceedings before a different ALJ, because the above ALJ erred: (1) in finding plaintiff's obesity and mental health conditions were not "severe" impairments; (2) in finding none of his impairments met or medically equaled any of those contained in 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.02 and § 1.04 ("Listing 1.02" and "Listing 1.04"); (3) in assessing his residual functional capacity; and (4) in finding him to be capable of returning to his past relevant work. For the reasons set forth below, though, the Court does not agree that the ALJ erred in determining plaintiff to be not disabled, and therefore hereby finds that the ALJ's decision should be affirmed.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See

ORDER - 2

Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.      Date Last Insured

To be entitled to disability insurance benefits, plaintiff "must establish that his disability existed on or before" the date his insured status expired. Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); see also Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security statutory scheme requires disability to be continuously disabling from time of onset during insured status to time of application for benefits, if individual applies for benefits for current disability after expiration of insured status).  Plaintiff's date last insured was September 30, 2004. Tr. 11, 40.  As such, to be entitled to disability insurance benefits, plaintiff must establish he was disabled prior to or as of that date. See Tidwell, 161 F.3d at 601.  But, as explained below, plaintiff has not done so here.

II.     The ALJ's Step Two Determination

At step two of the sequential disability evaluation process,[1] the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520.  An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1.  Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

---

[1] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

ORDER - 3

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).  Plaintiff has the burden of proving that his "impairments or their symptoms affect [his] ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

In this case, the ALJ found plaintiff had "severe" impairments consisting of moderate degenerative disc disease of the lumbar spine and coxa vara deformity of the left hip. See Tr. 11. Plaintiff argues the ALJ erred in not also finding his obesity and mental health conditions to be "severe" impairments as well.  With respect to plaintiff's obesity, the ALJ found in relevant part as follows:

> I also do not find that obesity is a severe condition during the relevant period. While the claimant was clearly obese at the time of the hearing, as he was five foot seven inches tall and weighed 280 pounds, there is no indication that the claimant was that heavy prior to September 2004.  In fact, the claimant reported in February 2008 that he had gained more than 80 pounds over the previous six months, well outside of the relevant period. Ex. 9F. 4.

Tr. 14.  Specifically, plaintiff asserts that while the ALJ found the record did not establish that he was obese prior to or as of his date last insured, he himself testified at the hearing that his obesity did exist during the relevant time period, and that it "directly related to his disabling limitations." ECF #11, p. 6. Defendant concedes the ALJ did not properly evaluate the evidence in the record regarding plaintiff's obesity prior to his date last insured (see ECF #15, p. 8), which does appear to indicate that condition existed during that period (see Tr. 277).

Defendant argues such error was harmless, however, because the credible evidence in the

ORDER - 4

record fails to indicate the existence of functional limitations greater than those the ALJ assessed

discussed below.  The Court agrees.  None of the objective medical evidence in the record shows

any work-related limitations stemmed from plaintiff's obesity.  At most, the record reveals only a

diagnosis of obesity.  See id.; Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere

existence of an impairment is insufficient proof of a disability").  In addition, while the ALJ must

take into account a claimant's pain and other symptoms at step two (see 20 C.F.R. § 404.1529),

the severity determination is to be made solely on the basis of the objective medical evidence in

the record:

> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself.  <u>At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities</u>.  If this assessment shows the individual to have the physical and mental ability(ies) necessary to perform such activities, no evaluation of past work (or of age, education, work experience) is needed.  Rather, it is reasonable to conclude, based on the minimal impact of the impairment(s), that the individual is capable of engaging in [substantial gainful activity].

SSR 85-28, 1985 WL 56856 *4 (emphasis added).  Thus, plaintiff's testimony notwithstanding,

to support a finding of "severity" in regard to obesity, there must be objective medical evidence

of actual work-related limitations stemming therefrom, which, as discussed above, is absent from

the record.  Accordingly, no error was committed by the ALJ here.

In regard to plaintiff's alleged mental conditions, the ALJ also found in relevant part that:

> The claimant's substance abuse history does not enhance his credibility, and would tend to lend credence to the notion that reasons other than his physical capacity affected his maintaining work.  However, there is insufficient predicate to establish substance abuse as a disabling impairment, and if [the] claimant was disabled on this basis he would not qualify for disability

ORDER - 5

> benefits.[2]
>
> . . .
>
> I find that the above listed impairments are both medically determinable and cause significant limitations to the performance of basic work activities. I also note substance abuse disorder, particularly cocaine and alcohol addiction; however, based upon the record, conclude that these conditions caused no more than mild limitations regarding the performance of activities of daily living; maintaining social functioning; and concentration/persistence/pace. This is supported by the [United States Department of Veterans Affairs] discharge evaluation, which included a Global Assessment of Functioning (GAF) score of 60.[3] Ex. 1F. 2. There is also no evidence of episodes of decompensation of extended duration.
>
> In her brief, the claimant's representative sites to "situational depression" and some vague notations that the claimant "tested positive" for depression and post traumatic stress disorder (PTSD); however, he received no mental health treatment for such alleged conditions, not even a prescription. The representative did not address any specific limitation stemming from such conditions and the claimant did not testify to any such limitations. Ex. SF. 89; 9B. 7. As such, I do not find that the medical evidence establishes a severe mental impairment. 20 C.F.R. § 404.1S20a( d)(l).

Tr. 12-14. Plaintiff argues that contrary to the ALJ's findings here, the record contains "a clear medical diagnosis of situational depression" (ECF #11, pp. 6-7; see also Tr. 237), and in a "screening test" for depression, he tested positive for both depression and PTSD (ECF #11, p. 7; see also Tr. 251).

Situational depression, however, would indicate as its name implies that it is situational only. But to be found disabled, plaintiff must establish that he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

---

[2] A claimant may not be found disabled if alcoholism or drug addiction would be "a contributing factor material to the Commissioner's determination" that the claimant is disabled. Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001) (citing 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J)).

[3] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007). "A GAF of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") at 34).

ORDER - 6

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). More importantly, though, the medical source who indicated the presence of situational depression stated he viewed plaintiff's "report" of a "persistent depressed mode" as such, because he was "without [the] other criteria to reach the threshold of a[n] axis I[4] diagnosis of depression." Tr. 240. Indeed, in terms of diagnostic impressions, that medical source did not give one for depression, but for substance abuse only. See id.

Accordingly, the Court finds the "diagnosis" of "situational depression" relied on here by plaintiff, is not sufficient to support a medically determinable mental health diagnosis that meets the durational requirement to establish disability. The screening test plaintiff cites, furthermore, merely represents the answers plaintiff gave in response to two questions provided upon intake for substance abuse recovery. See Tr. 251. In addition, it was expressly noted at that time that plaintiff's mental status was unremarkable, and that he presented without any signs of severe depression or anxiety. See id. Here too, therefore, the ALJ did not err in finding plaintiff did not have a severe mental health impairment.

III.    The ALJ's Step Three Determination

At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of the impairments set forth in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). See 20 C.F.R § 404.1520(d), § 416.920(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). If any of the claimant's impairments meet or medically equal a listed impairment, he or she is deemed disabled. See id.

---

[4] The DSM-IV "categorizes mental diagnoses under five different axes" and "Axis I diagnoses include mood and anxiety disorders, schizophrenia and other psychotic disorders, substance-related disorders, eating disorders, sleep disorders, and impulse-control disorders." Hallett v. Morgan, 287 F.3d 1193, 1209 n.8 (9th Cir. 2002), *amended and superseded on other grounds*, 296 F.3d 732 (9th Cir. 2002).

ORDER - 7

The burden of proof is on the claimant to establish he or she meets or medically equals any of the impairments contained in the Listings. See Tacket, 180 F.3d at 1098. "A generalized assertion of functional problems," however, "is not enough to establish disability at step three." Id. at 1100 (citing 20 C.F.R. § 404.1526).

A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508, § 416.908. It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." Id.; see also SSR 96-8p, 1996 WL 374184 *2 (determination that is conducted at step three must be made on basis of medical factors alone). An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248 *2.

An impairment, or combination of impairments, medically equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed impairment." Id.; see also Sullivan v. Zebley, 493 U.S. 521, 531 (1990) (to qualify for benefits by showing that unlisted impairment, or combination of impairments, is equivalent to listed impairment, medical findings equal in severity to all criteria for most similar listed impairment must be presented). However, "symptoms alone" will not justify a finding of medical equivalence. Id. The ALJ, furthermore, "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d 676 (9th Cir. 2005).

The ALJ also need not "state why a claimant failed to satisfy every different section of

ORDER - 8

the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not meet or exceed Listings). This is particularly true where, as noted above, the claimant has failed to set forth any reasons as to why the Listing criteria have been met or medically equaled. Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (finding ALJ's failure to discuss combined effect of claimant's impairments was not error, noting claimant offered no theory as to how, or point to any evidence to show, his impairments combined to equal a listed impairment).

Plaintiff argues the ALJ erred in finding that none of his impairments met or medically equaled the criteria of Listing 1.02 and Listing 1.04.[5] In regard to those Listings the ALJ found in relevant part as follows:

> In order to meet Listing l.02, which addresses *Major Dysfunction of a Joint Due to Any Cause*, the record must show a gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s); as well as involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in [20 C.F.R. Part 404, Subpart P, Appendix 1, §] l.00B2b. It is not clear whether the claimant's coxa vara deformity would satisfy this criteria as there was no associated subluxation, conracture, bony or fibrous ankylosis, or instability demonstrated by imaging or examination. Ex. 2F. There was also no evidence of joint space narrowing, bony destruction, or ankylosis of the joint. The reports of pain and stiffness are based on the claimant's subjective assessment.
>
> Finally, it is clear that the claimant did not exhibit an inability to ambulate effectively during the relevant period. The claimant's representative relies solely on the fact that the claimant used a cane to establish ineffective

---

[5] Plaintiff indicates he also is arguing that the ALJ erred in failing to find his impairments did not meet or medically equal Listing 12.04 (affective disorders), although it also appears that this just may be a typo in plaintiff's opening brief. See ECF #11, p. 7. In any event, the Court finds no error on the part of the ALJ in not finding plaintiff's alleged mental impairments met or medically equaled Listing 12.04, given that, as discussed above, the ALJ did not err in determining plaintiff had no "severe" mental impairments.

ORDER - 9

> ambulation, yet, the record shows significant periods where the claimant did not use a cane. For example, when he presented to establish care in September 2003, he reported that he had used a cane in the past, but that he had not been using it for the previous five months because it had been stolen. Ex.5F. 75. Thus, the record does not establish the claimant's hip impairment was severe enough to meet this Listing.
>
> Similarly, Listing l.04, which addresses *Disorders of the Spine*, requires a showing that [the] claimant's degenerative disk disease resulted in compromise of a nerve root or the spinal cord with "lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic non-radicular pain and weakness, and resulting in inability to ambulate effectively." Listing l.04(C). *See also* 1.00(B)(2)(b). Similarly, the imaging does not establish the requisite findings during the relevant period. In fact, the imaging report specifically noted that the degeneration was moderate and there was no mention of nerve root compromise. Ex. 2F. As discussed above, there was also no evidence that the claimant was not capable of ambulating.

Tr. 14-15 (emphasis in original).

Plaintiff first argues that because the ALJ is not a medical doctor, he lacked any medical expertise of his own, and thus he should have had a medical expert testify at the hearing, as there was no basis for his determination that none of plaintiff's impairments met or medically equaled the criteria of any of those contained in the Listings. It is true that the ALJ may not substitute his own lay opinion for the findings and opinions of a physician. See Gonzalez Perez v. Secretary of Health and Human Services, 812 F.2d 747, 749 (1st Cir. 1987); see also McBrayer v. Secretary of Health and Human Services, 712 F.2d 795, 799 (2nd Cir. 1983) (ALJ cannot arbitrarily substitute own judgment for competent medical opinion); Gober v. Mathews, 574 F.2d 772, 777 (3rd Cir. 1978) (same). Here, however, the ALJ did not improperly substitute his lay opinion for that of a medical doctor, but rather properly exercised his responsibility to evaluate the medical evidence in the record. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (ALJ has duty to determine credibility and resolve ambiguities and conflicts in medical evidence); see also Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982); Morgan v. Commissioner of the Social

ORDER - 10

Security Administration, 169 F.3d 595, 601, 603 (9th Cir. 1999).

The Court, furthermore, agrees with defendant that the ALJ was not required to obtain the testimony of a medical expert. The ALJ does have a duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). But it is only where the record contains "[a]mbiguous evidence" or the ALJ has found "the record is inadequate to allow for proper evaluation of the evidence," that the duty to "conduct an appropriate inquiry" is triggered. Id. (citations omitted); see also Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). Here, though, no inadequacy or ambiguity exists so as to require further development of the record. Instead, as explained below, the ALJ properly found that no Listing criteria was met or medically equaled.

Plaintiff argues he has long suffered from a left hip condition that he asserts meets and/or medically equals the criteria of Listing 12.02, which reads in relevant part:

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02. Section 1.00B2b, in turn, reads in relevant part:

> b. What We Mean by Inability to Ambulate Effectively
>
> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .

ORDER - 11

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b.  As noted by the ALJ, though, the record fails to reveal any evidence of joint space narrowing, bony destruction or ankylosis of the left hip joint. See Tr. 168 (finding joint space to be "well maintained").  Also as noted by the ALJ, plaintiff has not demonstrated "an inability to ambulate effectively" as defined by 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00B2b, given that the record shows he apparently did not always require the use of a cane – which, as pointed out by defendant, was not actually prescribed for (as opposed to merely having been requested by) him, and thus it was not actually medically required (see Tr. 164, 180-81, 271, 304-06, 316, 329, 333, 359) – and that, even when plaintiff did employ a cane, there is no evidence in the record to establish the use thereof limited the functioning of both his upper extremities.

      Plaintiff further argues the degenerative disc disease in his lumbosacral spine meets or medically equals Listing 12.04C.  That Listing provides in relevant part as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
>
> . . .
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.  Specifically, plaintiff asserts his degenerative disc disease diagnosis satisfies the above criteria here, because imaging studies demonstrated spinal stenosis with pseudoclaudication.  But none of the imaging studies in the record actually have resulted in such findings, even though plaintiff himself would interpret them as establishing the existence thereof. See Tr. 168-71, 235.  Plaintiff is not a medical expert, nor is this Court.  As

ORDER - 12

such, the Court declines to substitute its own lay opinion for that of the qualified medical sources who interpreted the above studies. Further, as with Listing 1.02, the evidence in the record fails to demonstrate an inability to ambulate as defined by 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00B2b. Accordingly, the ALJ's step three analysis was without error.

IV.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In this case, the ALJ assessed plaintiff with the following residual functional capacity:

> **. . . [T]hrough the date last insured, the claimant had the residual functional capacity to perform the full range of light work, including the abilities to: lift/carry 20 pounds occasionally, and 10 pounds frequently; stand/walk six hours in an eight hour workday; sit six hours in an eight hour workday; and push/pull without limitation.**

ORDER - 13

Tr. 15 (emphasis in original).  Plaintiff argues that the objective medical evidence in the record does not support this RFC assessment, and that he suffers from non-exertional[6] limitations due to his mental health impairments, which were not addressed by the ALJ.  However, plaintiff fails to state with any specificity what evidence does not support the ALJ's assessment and what non-exertional limitations were not addressed.  See Carmicle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's decision was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued in opening brief ordinarily will not be considered).  Further, as discussed above, the ALJ did not err in his evaluation of the medical evidence in the record concerning both plaintiff's obesity and his alleged mental health impairments.

V.	The ALJ's Step Four Determination

At step four of the sequential disability evaluation process, the ALJ found plaintiff to be capable of performing his past relevant work.  See Tr. 17.  Plaintiff argues the ALJ erred here in so finding, but once more he fails to state with any specificity exactly in what way the ALJ erred.  Plaintiff has the burden at step four to show that he is incapable of returning to his past relevant work.  Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).  Given that, as discussed above, the ALJ did not err in assessing plaintiff's residual functional capacity, and plaintiff has provided no specific argument as to why that RFC assessment does not support the ALJ's determination at this step, the Court finds that determination to have been proper.

---

[6] "Exertional limitations" are those that only affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b).  "Nonexertional limitations" only affect the claimant's"ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c)(1).

ORDER - 14

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ properly concluded plaintiff was not disabled, and therefore hereby affirms the ALJ's decision.

DATED this 17th day of February, 2011.

Karen L. Strombom
United States Magistrate Judge

ORDER - 15